ACCO BRANDS, INC. (doing business as Kensington Technology Group), Plaintiff–Appellant,

v.

MICRO SECURITY DEVICES, INC. (doing business as PC Guardian), Defendant–Appellee.

No. 02–1567.

United States Court of Appeals, Federal Circuit.

DECIDED: Oct. 7, 2003.

K.T. Cherian, Townsend and Townsend and Crew LLP, of San Francisco, California, argued for plaintiff-appellant. With him on the brief were Brian A.E. Smith, Robert A. McFarlane and Sean Paul Hodge.

John M. McCormack, Kolisch Hartwell, P.C., of Portland, Oregon, argued for defendant-appellee. With him on the brief was Owen W. Dukelow.

Before NEWMAN, RADER, and DYK, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

ACCO Brands, Inc., doing business as Kensington Technology Group, sued Micro Security Devices, Inc., doing business as PC Guardian, in the United States District Court for the Northern District of California, charging PC Guardian with infringement of United States Patent No. B1 5,502,989 (the '989 patent). The court granted summary judgment of noninfringement in favor of PC Guardian.[1] The judgment is affirmed.

## DISCUSSION

The '989 patent is directed to a locking mechanism for portable electronic devices such as computers. Claim 10 is the only claim in suit:

10. A locking system, comprising:

a portable electronic device including an exterior wall defining a security slot;

cable means for attaching to a first object other than to the portable electronic device;

a housing, proximate to said electronic device and including a slot engagement member having a slot engaging portion provided with a locking member having a peripheral profile complementary to preselected dimensions of said security slot to thereby permit said locking member to extend into said slot, said slot engagement member being rotatable between an unlocked position wherein said locking member is removable from the slot, and a locked position wherein said

---

1. *ACCO Brands, Inc. v. Micro Security Devices Inc.*, No. C 00–2296, 2002 WL 1735385, (N.D.Cal. July 24, 2002). As did the district court, we refer to ACCO Brands as "Kensington," and Micro Security Devices as "PC Guardian."

locking member is retained within the slot;

a pin, coupled through said housing, for extending into said security slot proximate said slot engaging portion when said slot engagement member is in said locked position to thereby inhibit rotation of said slot engagement member to said unlocked position; and

means, coupled to said housing, for attaching said cable to said housing.

(Emphasis added.)

The accused PC Guardian devices are the Notebook Guardian 2000 and Notebook Guardian 2001. The district court construed the "pin" clause to require that the pin actively extends into the security slot when the slot engagement member is in the locked position, and that the pin thereby inhibits rotation to the unlocked position:

[The pin is] a post or peg, coupled through said housing, for extending into said security slot proximate said slot engaging portion at or during the time that said slot engagement member is in said locked position to thereby inhibit rotation of said slot engagement member to said unlocked position. ("Extending" being an active verb.)

*ACCO*, at *6. Kensington challenges this claim construction and its application to avoid infringement by the PC Guardian devices.

## I

■■■ An infringement analysis requires that the court determine the scope and meaning of the claims asserted, and compare the construed claims to the allegedly infringing device. *Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448, 1454, 46 USPQ2d 1169, 1172 (Fed.Cir. 1998) (en banc). We give plenary review to the district court's claim construction,

*id.* at 1455, 138 F.3d 1448, 46 USPQ2d at 1173, and to the summary judgment of non-infringement. *Conroy v. Reebok International, Ltd.*, 14 F.3d 1570, 1575, 29 USPQ2d 1373, 1377 (Fed.Cir.1994).

## A

■■■ The parties dispute whether the clause "for extending into said security slot proximate said slot engaging portion when said slot engagement member is in said locked position" describes a functional attribute of the pin or a purely structural one. At the district court the parties agreed that in this context "when" means "at or during the time that," and on appeal they frame the question as whether "extending" is an "active verb" or a "state of being." The district court ruled that "extending" is used as an active verb, and that the pin must extend at or during the time that the slot engagement member is in the locked position. Kensington states that the court's construction is inconsistent with the plain meaning of the claim language, that the court improperly excluded the embodiments of patent figures 11 and 13 from the scope of the claims, and that this construction violates the doctrine of claim differentiation because during reexamination "when" was amended to "after" in other claims, which are presumptively of different scope, but was not amended in claim 10.

The specification shows that in operation of the patented device the slot engagement member is first placed in the security slot and then rotated to reach the locked position. The pin extends into the slot and prevents rotation to the unlocked position. The specification describes some embodiments in which the pin is extended into the slot before the slot engagement member is rotated, and others wherein the pin is extended after the locked position is reached

by rotation. The '989 patent, a divisional in a family of patents claiming priority to U.S. Application Ser. No. 07/824,964, is directed to the invention exemplified in Figure 14, depicting an embodiment in which the pin is extended after the slot engagement member is in locked position. Figure 14 is shown on the front page of the '989 patent. *See* 37 C.F.R. § 1.84(j) ("One of the [drawings] should be suitable for inclusion on the front page of the patent application publication and patent as the illustration of the invention.") The claim states that the pin is "for extending" when the slot engagement member is in locked position (that is, after it is in the slot and rotated). Viewed in light of the specification, the phrase "for extending" is a functional restriction on the pin. *See, e.g., K–2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1363, 52 USPQ2d 1001, 1004 (Fed. Cir.1999) ("The functional language is, of course, an additional limitation in the claim.") Kensington's argument that "for extending" describes a "state of being" that encompasses a pin that extends into the slot before locking is negated by the explanation and argument during prosecution. We conclude, as did the district court, that the participle "extending" refers to an action occurring when the slot engagement member is rotated to and in the locked position.

 During prosecution of the reexamination application, in response to a rejection of independent claims 1, 10, and 11 under 35 U.S.C. § 103, the applicant described the device of the Jacobi reference with: "A pin 25 is movable when the locking member is in the locked position to prevent the locking member from rotating," and also distinguished the reference on other grounds. In addressing a rejection of claims 1–3 under 35 U.S.C. § 102 and § 103 based on the Young reference, the applicant distinguished the pin, argued

that "for extending" is a functional recitation that must be given patentable weight, and identified "when said slot engagement member is in said locked position" as a limitation not present in the references. The examiner accepted this argument, which the applicant consistently applied to the pin element of independent claims 1, 10 and 11, and withdrew rejections related to the Young reference, stating: "In Young, the slot engagement member 60 is put into its locking position when the pin enters the slot.... Because Young fails to teach a pin coupled through the hous[ing] which extends into the security slot after the slot engagement member is in the locked position the 102 rejection was improper." Statements made during prosecution which clearly disclaim a particular claim interpretation will limit the scope of the claims. *Ballard Medical Products v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1359, 60 USPQ2d 1493, 1498 (Fed. Cir.2001). *See Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576, 34 USPQ2d 1673, 1676 (Fed.Cir. 1995) ("The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution.")

The Young reference was cited against claims 1–3. Kensington then amended independent claim 1, changing "for extending ... when" to "and extending ... after." Kensington also made changes to other aspects of claims 1 and 10 responsive to other rejections. The examiner then issued a Notice of Intent to Issue Reexamination Certificate, with a statement of Reasons for Allowance which reiterated his understanding that the pin is extended after the slot engagement member is in locked position:

> The following is an examiner's statement of reasons for allowance: the instant invention is allowable over the prior art of record in that the prior art fails to

teach or make obvious a computer locking system combining a computer having an aperture with a locking assembly as particularly claimed. In particular the prior art fails to teach or make obvious a computer locking assembly having a locking member which is rotatable to a locked position after being placed through an opening in a computer having a configuration matching that of the locking member and subsequently a pin being placed into the opening after the locking member is rotated to the locked position to hold the lock device within the computer such that the computer can be locked to another object using a cable to prevent theft of the computer.

Kensington did not respond to this statement. Although there is no obligation to respond to an examiner's statement of Reasons for Allowance, and the statement of an examiner will not necessarily limit a claim, *Bell Atlantic Network Services, Inc. v. Covad Communications Group, Inc.,* 262 F.3d 1258, 1273, 59 USPQ2d 1865, 1874 (Fed.Cir.2001), in this case the examiner simply repeated the arguments that the patentee had presented.

The pin was claimed in original claim 10 in the same terms as in claim 1, but claim 10 was not amended. Although Kensington argues that the examiner's Reasons for Allowance apply only to the claims in which "for extending ... when" was replaced with "and extending ... after" during reexamination, the examiner made no such distinction, and Kensington made no arguments for claim 10 that could suggest that this statement did not apply to all the claims. *See Tandon Corp. v. United States International Trade Comm'n,* 831 F.2d 1017, 1023, 4 USPQ2d 1283, 1288 (Fed.Cir.1987) (recognizing that "two claims which read differently can cover the same subject matter.")

We conclude that the pin clause of claim 10 must be construed in the same way as the pin clause of claim 1, for the examiner's Reasons for Allowance make clear that the examiner and the applicant understood that the invention requires that the pin extends (actively) into the slot after rotation. *See Modine Mfg. Co. v. United States International Trade Comm'n,* 75 F.3d 1545, 1551, 37 USPQ2d 1609, 1612 (Fed.Cir.1996) ("[I]t is incorrect to construe a claim as encompassing the scope that was relinquished in order to obtain allowance of another claim, despite a difference in the words used.").

■ Kensington also argues that the specification includes embodiments, shown in Figures 11 and 13, that are not within the scope of claim 10 as construed by the district court. However, embodiments in which the pin extends through the slot before rotating to locked position were claimed in U.S. Patent No. 5,381,685, not in suit. The '989 patent is a division related to the '685 patent, and was filed in response to a restriction requirement. *See* 35 U.S.C. § 121 ("If two or more independent and distinct inventions are claimed in one application, the Commissioner may require the application to be restricted to one of the inventions.") The '685 patent contains claims that do not limit pin extension temporally and claims that require that the pin extends into the slot before the slot engagement member is rotated to locked position. Figure 14 was selected "as the illustration of the invention" of the '989 patent. *See* 37 C.F.R. § 1.84(j). The presence in the '989 specification of embodiments carried over from the parent application, but claimed in other patents, does not serve to broaden the scope of the '989 claims that were the subject of the divisional application.

## B

■ The parties also dispute the meaning of "pin ... for extending ... to thereby inhibit rotation of said slot engagement member to said unlocked position." Kensington argues that the district court improperly construed this clause to require that the pin directly interfere with rotation of the lock, thereby improperly adding an extraneous limitation to the claim and excluding the embodiments of figures 3–15 from the scope of the claim. PC Guardian responds that the district court adopted the ordinary meaning of this clause, as was argued by Kensington during the claim construction hearing. PC Guardian also states that the district court correctly construed the claim to require that rotation of the slot engagement member "to said unlocked position" must be inhibited by extension of the pin.

We confirm the district court's construction of this clause. The specification shows that the pin extends through the security slot to prevent rotation of the slot engagement member into the unlocked position and removal from the slot. In the embodiments of Figures 3–15, the pin inhibits rotation of the slot engagement member to the unlocked position by extending through the security slot and maintaining the position of the lock housing in relation to the slot and the slot engagement member. Those embodiments, therefore, are consistent with the prosecution record, and are not excluded from the scope of this element as correctly construed. We conclude that the claim requires a pin that can be extended into the security slot and thereby inhibit rotation of the slot engagement member between the locked and unlocked positions.

## II

The district court found no infringement, literally or under the doctrine of equivalents, based on its construction that claim 10 does not include a pin that extends into the security slot before the slot engagement member is rotated to the locked position.

## A

■ Literal infringement requires that every element of the invention as claimed is present in the accused device. *Southwall Technologies,* 54 F.3d at 1575, 34 USPQ2d at 1676. Infringement by equivalents requires that the accused device contains elements identical or equivalent to each element of the claim. *Warner–Jenkinson . Co. v. Hilton Davis Chemical Co.,* 520 U.S. 17, 40, 117 S.Ct. 1040, 137 L.Ed.2d 146, 41 USPQ2d 1865, 1875 (1997).

The two accused PC Guardian devices are of similar structure and operation, as illustrated below:

*2. Cam Rotates*

*4. Hook Arm (Slot Engagement Member) Pivots Upward*

*1. Rotate Key*

*3. Lever Arm Is Depressed*

The hook arm (the slot engagement member of claim 10) rotates out from a recess in the flanged tab structure (the pin) into locked position. In use, the flanged tab structure and the hook arm are inserted together into a security slot in the portable electronic device, and the hook arm is pivoted into the locked position when the key is turned. Kensington's technical witness, David Dornfield, agreed with this method of operation: "In both accused products, the pin—the flanged tab structure—extends into the slot before the slot engagement member—the hook arm—is placed in the locked position."

On this basis the district court found no literal infringement, for the hook arm and flanged tab structure of the PC Guardian products are inserted simultaneously and before the cam is rotated to place the hook arm in the locked position. The flanged tab of the accused devices cannot be extended into the security slot when the hook arm is in locked position. Moreover, the extension of the flanged tab into the slot has no effect on the pivoting or rotation of the hook arm to its locked position; instead, in the PC Guardian devices it is the cam, not the flanged tab structure, that inhibits movement of the hook arm.

■ While Kensington argues that the flanged tab inhibits rotation to the unlocked position because, in its absence, the hook arm may be rotated and removed from the slot, this assertion is without support. The pin does not in fact prevent rotation to the unlocked position; the unlocked position is achieved solely by extending or retracting the hook arm. Thus the tab could not be extended when the slot engagement member is in locked position, and the lock could not attain a locked position. The slot engagement member would not rotate between an unlocked position wherein the locking member is removable from the slot, and a

locked position, as required by claim 10. These operational facts are not disputed. We therefore affirm the summary judgment that there is no literal infringement of claim 10.

## B

■ Kensington also argues that the mode of operation of PC Guardian's flanged tab structure is insubstantially different from that of the pin of claim 10, even under the district court's claim construction, stating: "Whether the pin in the accused device extends before or after the slot engagement member is rotated to the locked position is an insubstantial difference." However, this difference was a focus of the reexamination, and the basis of the amendment to distinguish the Young patent. In the PC Guardian devices the pin extends into the slot before the hook arm is moved into locked position, whereas the claim requires that the pin extends when or after the slot engagement member is moved. Whether the pin extends before, at the time of, or after the slot engagement member is locked was a distinction from the prior art, and a distinction between embodiments subject to restriction. When a claim amendment was made to distinguish the prior art at the point of difference between the claim and the accused device, the difference cannot be viewed as insubstantial, because it was necessary for patentability on reexamination. The court's findings that the PC Guardian devices are not equivalent to the claimed invention, and thus do not give rise to infringement under the doctrine of equivalents, must be sustained.

■ Kensington also argues that the district court erroneously compared the PC Guardian devices to "the Kensington product" rather than to the invention as claimed. The language of the claim, not the patent owner's commercial product, is

the measure of infringement. *Amstar Corp. v. Envirotech Corp.*, 730 F.2d 1476, 1481–82, 221 USPQ 649, 653 (Fed.Cir. 1984). PC Guardian responds that the district court merely used the term "product" to refer to the properly construed claim. Although the court indeed referred to "the Kensington product" in its infringement analysis, the court also compared the construed claim to the PC Guardian devices. We discern no reversible error in this analysis.

The judgment of noninfringement is

*AFFIRMED.*