# United States Court of Appeals for the Federal Circuit

04-1013

ALFRED SALAZAR,

Plaintiff-Appellant,

v.

PROCTER & GAMBLE COMPANY,

Defendant-Appellee.

Henry C. Su, Fenwick & West LLP, of Mountain View, California, argued for plaintiff-appellant. With him on the brief were Brenda M. Simon and Kent Kemeny.

Charles J. Faruki, Faruki Ireland & Cox P.L.L., of Dayton, Ohio, argued for defendant-appellee. With him on the brief was Thomas R. Kraemer.

Appealed from: United States District Court for the Northern District of Oklahoma

Senior Judge H. Dale Cook

# United States Court of Appeals for the Federal Circuit

04-1013

ALFRED SALAZAR,

Plaintiff-Appellant,

v.

PROCTER & GAMBLE COMPANY,

Defendant-Appellee.

_____

DECIDED:  July 8, 2005

_____

Before RADER, BRYSON, and GAJARSA, <u>Circuit Judges</u>.

Opinion for the court filed by <u>Circuit Judge</u> RADER.  Dissenting opinion filed by <u>Circuit Judge</u> BRYSON.

RADER, <u>Circuit Judge</u>.

Alfred Salazar owns U.S. Patent No. 5,535,474 ('474 patent) for a toothbrush having polishing rods that clean and polish the teeth and stimulator rods that stimulate the gums during brushing.  '474 patent, Abstract.  Salazar, acting <u>pro se</u>, sued Proctor & Gamble Co. (Proctor & Gamble) for infringement of the '474 patent.  Proctor & Gamble moved for summary judgment because its toothbrushes do not include the "elastic" feature of claim 1, the only independent claim of the '474 patent.  On September 8, 2003, the district court issued an order construing the "elastic" limitation and granting summary judgment to Proctor & Gamble because its products do not infringe literally or under the doctrine of equivalents.  <u>Salazar v. Procter & Gamble Co.</u>, No. 02-CV-590-C (N.D. Okla. Sept. 8, 2003) (<u>Order</u>).  Because the district court erred in using the patent

examiner's Reasons of Allowance to exclude nylon from the scope of the claim term "elastic," this court vacates the grant of summary judgment and remands.

I

Mr. Salazar submitted U.S. Patent Application No. 409,149 ('149 application) on March 23, 1995, which eventually matured into the '474 patent. The '474 patent claims a toothbrush with, <u>inter alia</u>, elastic stimulator rods and elastic polishing rods that extend above the bristles of the brush. '474 patent, col. 5, l. 30 – col. 6, l. 23. The '149 application initially contained an independent claim 1 and five dependent claims. Claim 2 of the '149 application depended from claim 1; and claim 3 from claim 2. The examiner rejected claim 1 as obvious over U.S. Patent No. 3,072,944 (issued Jan. 15, 1963) to Clayton (Clayton) in light of U.S. Patent No. 3,103,679 (issued Sept. 17, 1963) to Clemens (Clemens). The examiner objected to claims 2 and 3 as allowable subject matter dependent upon a rejected base claim.

The applicant responded by canceling claims 1-3 and introducing a new claim 7 based on the allowable subject matter of claim 3. The examiner allowed claim 7 without rejection,[1] which issued as claim 1 of the '474 patent. In the Notice of Allowance, the examiner made the following remarks in the Examiner's Statement of Reasons for Allowance:

> Claim 7 now incorporates previously held allowable subject matter . . . . Although the patent to Clemens appears to have the recited structure, Clemens' "rods" 22 are made of nylon, which is not considered "elastic". Obviously the "rods" of Clemens are flexible, but are not considered to be "elastic" as recited by the claim.

---

[1] Although claim 7 was not rejected, the examiner made amendments to claim 7 not pertinent to this appeal.

The applicant did not respond to these remarks by the examiner. The '474 patent issued with claim 7 renumbered as claim 1.

Mr. Salazar sued Procter & Gamble alleging infringement of certain claims of the '474 patent. Procter & Gamble filed a motion for summary judgment of no infringement either literally or under the doctrine of equivalents. Proctor & Gamble contended that the stimulator and polishing rods in its products are not "elastic" as required by claim 1. The district court construed the term "elastic" and granted Procter & Gamble's motion for summary judgment. Order at 5 & 7. Specifically, the district court construed the term "elastic" as "any material other than nylon, capable of returning to an initial state or form after deformation." Order at 5 (internal quotation and citation omitted).

The district court granted summary judgment of no infringement because Mr. Salazar did not present sufficient evidence to raise an issue of fact about the elasticity of the stimulator and polishing rods in the accused products. Id. at 7. Thus, the district court concluded that the accused products did not fall within the court's interpretation of the claim term "elastic." Id. The district court also found that the doctrine of prosecution history estoppel barred Mr. Salazar from asserting infringement of the "elastic" limitation under the doctrine of equivalents. Id. at 6. Mr. Salazar appeals.

II.

A determination of infringement requires a proper interpretation of the scope and meaning of the claim followed by a comparison of the accused product to that claim scope. Omega Eng'g, Inc. v. Raytek Corp., 334 F.3d 1314, 1320 (Fed. Cir. 2003); Carroll Touch, Inc. v. Electro Mech. Sys., Inc., 15 F.3d 1573, 1576 (Fed. Cir. 1993). In the context of a grant of summary judgment of no infringement, this court reviews the

entire infringement inquiry without deference. Omega Eng'g, 334 F.3d at 1320. "Summary judgment is therefore appropriate when there is no genuine issue of material fact or when, drawing all factual inferences in favor of the nonmoving party, no 'reasonable jury could return a verdict for the nonmoving party.'" Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

In construing claims, "[t]his court . . . considers the prosecution history to determine whether the applicant clearly and unambiguously disclaimed or disavowed any interpretation during prosecution in order to obtain claim allowance." 3M Innovative Props. Co. v. Avery Dennison Corp., 350 F.3d 1365, 1371 (Fed. Cir. 2003) (internal quotations and alterations omitted); accord Omega Eng'g, 334 F.3d at 1324; Middleton, Inc. v. Minn. Mining & Mfg. Co., 311 F.3d 1384, 1388 (Fed. Cir. 2002); Standard Oil Co. v. Am. Cyanamid Co., 774 F.2d 448, 452 (Fed. Cir. 1985).

The doctrine of prosecution history estoppel serves to limit the doctrine of equivalents when the applicant makes a narrowing amendment for purposes of patentability, or clearly and unmistakably surrenders subject matter by arguments made to the examiner. See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 535 U.S. 722, 736 (2002) (narrowing amendment for purposes of patentability); Eagle Comtronics, Inc. v. Arrow Communication Labs., Inc., 305 F.3d 1303, 1316 (Fed. Cir. 2002) (argument-based estoppel); Elaky Mfg. Co. v. Ebco Mfg. Co., 192 F.3d 973, 979 (Fed. Cir. 1999) (argument-based estoppel).

The first and only time the examiner discussed the "elastic" limitation was in the Examiner's Statement of Reasons for Allowance. The examiner did not at any time reject a claim of the '149 application containing the "elastic" limitation as anticipated or

obvious in view of the prior art.[2] Other than the remarks in the Examiner's Statement of Reasons for Allowance, the prosecution history does not contain any discussion of the "elastic" limitation by either the examiner or the applicant. Nonetheless, the district court excluded nylon from the scope of "elastic." Order at 5. Specifically, the district court found that the remarks in the Examiner's Statement of Reasons for Allowance "amended the claim specifically to exclude nylon from the definition of 'elastic.'" Id. Thus, this appeal requires this court to decide whether unilateral statements of an examiner in stating reasons for allowance can create a clear and unambiguous disavowal of claim scope and give rise to prosecution history estoppel.

The regulations in force during the prosecution of the '149 application state:

If the examiner believes that the record of the prosecution as a whole does not make clear his or her reasons for allowing a claim or claims, the examiner may set forth such reasoning. The reasons shall be incorporated into an office action rejecting other claims of the application or patent under reexamination or be the subject of a separate communication to the applicant or patent owner. The applicant or patent owner may file a statement commenting on the reasons for allowance within such time as may be specified by the examiner. <u>Failure to file such a statement shall not give rise to any implication that the applicant or patent owner agrees with or acquiesces in the reasoning of the examiner.</u>

37 C.F.R. § 1.109 (1996) (emphasis added).[3] These regulations offer the applicant an opportunity to respond to the examiner's unilateral reasons for allowance. The regulations also state, however, that the applicant does not acquiesce in those reasons if the applicant declines to respond.

---

      [2] Claims of the '149 application containing the "elastic" limitation were rejected by the examiner for reasons not pertinent to this appeal.

      [3] 37 C.F.R. § 1.109 has since been amended and now appears at 37 C.F.R. § 1.104(e) (2003).

This court has recognized that an Examiner's Statement of Reasons for Allowance "will not necessarily limit a claim." ACCO Brands, Inc. v. Micro Sec. Devices, Inc., 346 F.3d 1075, 1079 (Fed. Cir. 2003). Consequently, an applicant's silence regarding statements made by the examiner during prosecution, without more, cannot amount to a "clear and unmistakable disavowal" of claim scope. See 3M Innovative Props., 350 F.3d at 1373-74 ("'Prosecution history . . . cannot be used to limit the scope of a claim unless the applicant took a position before the PTO.' Schwing GmbH v. Putzmeister Aktiengesellschaft, 305 F.3d 1318, 1324-25 (Fed. Cir. 2002) (emphasis added). An applicant's silence in response to an examiner's characterization of a claim does not reflect the applicant's clear and unmistakable acquiescence to that characterization if the claim is eventually allowed on grounds unrelated to the examiner's unrebutted characterization."). After all, the applicant has disavowed nothing.

Procter & Gamble concedes that the law precludes drawing inferences from an applicant's decision to decline comment on an Examiner's Statement of Reasons for Allowance, yet argues that Mr. Salazar should be bound by "the message he sent to the public" by his silence.

Procter & Gamble supports its position with this court's language that, on its face, appears to support Procter & Gamble. However, a closer inspection of those cases reveals that Procter & Gamble either cites to dicta or to cases addressing issues different from this case. Procter & Gamble first quotes TorPharm Inc. v. Ranbaxy Pharmaceuticals, Inc., 336 F.3d 1322, 1330 (Fed. Cir. 2003):

> Whether the patentee chooses to dispute the examiner's view of matters is relevant to claim interpretation, for there a court may need to ascertain exactly what subject matter was actually examined and allowed by the PTO. Patent examination would serve little purpose unless the scope of

the exclusive patent right correlated with the matter allowed by the PTO. Accordingly, <u>in ascertaining the scope of an issued patent, the public is entitled to equate an inventor's acquiescence to the examiner's narrow view of patentable subject matter with abandonment of the rest. Such acquiescence may be found where the patentee</u> narrows his or her claims by amendment, or <u>lets stand an examiner's restrictive interpretation of a claim</u>.

(internal citations omitted) (emphases supplied by Procter & Gamble). <u>TorPharm</u> addresses a different issue from that before this court. In <u>TorPharm</u>, the applicant added limitations to claims to overcome an obviousness rejection. Later during litigation, the defendant discovered and showed that the added limitation was also in the prior art. The defendant asserted that the patentee had acquiesced in the obviousness of its invention by amending its claims. Therefore, according to the defendant, the patentee could not challenge its obviousness contentions. This court in <u>TorPharm</u> held that the applicant's "acquiescence" in the obviousness rejection by amending its claims did <u>not</u> preclude the patentee from contesting obviousness in litigation. <u>Id.</u> at 1331. Thus, <u>TorPharm</u> does not hold that a patentee's silence in the face of an examiner's unilateral statements in a Notice of Allowance amounts to a clear disavowal of claim scope.

Procter & Gamble next quotes the following passage from <u>Inverness Medical Switzerland GmbH v. Princeton Biomeditech Corp.</u>, 309 F.3d 1365, 1372 (Fed. Cir. 2002):

> [E]ven where the ordinary meaning of the claim is clear, it is well-established that the prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution. A broader definition may be disclaimed, for example, where the examiner adopts a narrow definition and the applicant does not object.

(internal quotations and citations omitted). This broad language, however, is merely dicta. <u>Inverness</u> actually rejected the appellee's argument that a statement in the

examiner's Reasons for Allowance governed the construction of the claim term at issue. Id. at 1373.

Moreover, the cited quotations from both TorPharm and Inverness rely on Elkay. In Elkay, the examiner rejected some claims in the application for obviousness. 192 F.3d at 978. In response, the applicant did not substantially amend the claims, but overcame the rejection by arguing around the prior art cited by the examiner. Id. At trial, the patentee discounted its own prosecution arguments that had overcome the examiner's obviousness rejection. The patentee sought to show that those arguments were insignificant and should not provide a basis to narrow the scope of the claims. Id. at 979. This court rejected the patentee's argument. In crediting the applicant's narrowing arguments during prosecution, this court noted that the examiner expressly accepted those arguments in the Statement of Reasons for Allowance. Id. Thus, Elkay holds that the Examiner's Statement of Reasons for Allowance may help show that the applicant's own arguments during prosecution constitute a clear disavowal of claim scope. See also Lemelson v. Gen. Mills, Inc., 968 F.2d 1202, 1207 (Fed. Cir. 1992) (holding that a patentee acquiescing in an examiner's rejection of a broad claim by filing narrower claims cannot later regain the broader scope previously abandoned); ACCO Brands, 346 F.3d at 1079 (relying on comments made in an Examiner's Statement for Reasons of Allowance to limit claim scope because "in this case the examiner simply repeated the arguments that the patentee had presented").

In sum, Procter & Gamble does not present any case law that stands for the proposition that an examiner's unilateral statements in a Notice of Allowance constitute a clear and unambiguous disavowal of claim scope. Once again, the applicant has

disavowed nothing. This court refuses to create a rule or presumption that the applicant in this case disavowed claim scope by silence.

Procter & Gamble admits that Mr. Salazar was not required to answer the examiner's statement, but argues that "it does not follow that the patent examiner's comments then should be ignored." Although unilateral statements by an examiner do not give rise to a clear disavowal of claim scope by an applicant, it does not necessarily follow that such statements are not pertinent to construing claim terms. Statements about a claim term made by an examiner during prosecution of an application may be evidence of how one of skill in the art understood the term at the time the application was filed. However, as explained above, an applicant's silence regarding such statements does not preclude the applicant from taking a position contrary to the examiner's statements when the claim terms are construed during litigation.

The district court relied upon the same remarks in the Examiner's Statements for Reasons of Allowance to find that prosecution history estoppel bars Mr. Salazar from asserting infringement of the "elastic" element under the doctrine of equivalents. Order at 6-7. Although the claim language was not altered in response to the examiner's remarks in the Examiner's Statement for Reasons of Allowance, the district court found that the examiner's remarks "amended" the "elastic" element of the claim. Id. at 7. However, as previously discussed, this court finds that the examiner's unilateral remarks did not alter the scope of the claim.[4] An examiner's statement cannot amend a claim.

---

[4] The parties do not dispute that introducing claim 7 based on the allowable subject matter of dependent claim 3 of the '149 application was not a narrowing amendment for purposes of patentability and, therefore, does not by itself give rise to prosecution history estoppel. See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki

Consequently, the district court clearly erred in finding that claim 1 was "amended." Moreover, as the regulation and this court's reasoning above discuss, the examiner's unilateral remarks alone do not affect the scope of the claim, let alone show a surrender of claimed subject matter that cannot be recaptured under the doctrine of equivalents. Thus, this court reverses the district court's holding that prosecution history bars Mr. Salazar from asserting infringement of the "elastic" element under the doctrine of equivalents.

The parties only contest whether the applicant's silence to the examiner's remarks in the Examiner's Statements of Reasons for Allowance amounts to a clear disavowal of claim scope as found by the district court. Because such statements do not amount to a clear disavowal of claim scope by the applicant, this court vacates the portion of the district court's claim construction excluding nylon from falling within the scope of the "elastic" element. This court affirms the remaining portion of the district court's claim construction that "elastic" means "capable of returning to an initial state or form after deformation." Whether the accused products satisfy the "elastic" limitation in the asserted claims is a factual matter that this court leaves for the district court to resolve in the first instance.

III

This court vacates the district court's grant of summary judgment of no literal infringement and no infringement under the doctrine of equivalents. The district court's claim construction excluding nylon from the scope of the "elastic" element is also vacated. This court affirms the remaining portion of the district court's claim construction

Co., 535 U.S. 722, 736 (2002) (stating that an amendment that is "truly cosmetic" does not give rise to prosecution history estoppel).

of "elastic."  This case is remanded to the district court for further proceedings consistent with this opinion.

COSTS

Each party shall bear its own costs.

VACATED-IN-PART, AFFIRMED-IN-PART, and REMANDED

# United States Court of Appeals for the Federal Circuit

04-1013

ALFRED SALAZAR,

Plaintiff-Appellant,

v.

PROCTER & GAMBLE COMPANY,

Defendant-Appellee.

BRYSON, <u>Circuit Judge</u>, dissenting.

I respectfully dissent. The '474 patent distinguishes between the stimulator rod and the bristles that are mounted together in recessed sockets in the Salazar toothbrush. It states that the bristles are typically "composed of conventional bristle material such as nylon," while the stimulator rod "is composed of an elastic material, typically rubber or rubber substitute." '474 patent, col. 4, ll. 31-34. The patent thus suggests that the stimulator rod and the bristles are made of different materials, which contributes to the differences in their functions. In light of the disclosure in the patent, it was unsurprising that the examiner understood the Salazar stimulator rods to be made of a substance other than nylon, and that he based his distinction of the prior art Clemens patent on that ground.

It is true that, in general, an inventor has no affirmative obligation to respond to an examiner's characterization of a claim. That is, an applicant is not bound by every statement made by an examiner during the course of the prosecution unless the

applicant corrects the statement on the record. We have held, for example, that an applicant's silence in response to an examiner's characterization of a claim "does not reflect the applicant's clear and unmistakable acquiescence to that characterization if the claim is eventually allowed on grounds unrelated to the examiner's unrebutted characterization." 3M Innovative Props. Co. v. Avery Dennison Corp., 350 F.3d 1365, 1373-74 (Fed. Cir. 2003). In this case, however, the examiner's statement related directly to the ground on which the patent was issued. More importantly, the statement is relevant not because it serves as the basis for a finding of disclaimer by the inventor, but because it indicates how a person of ordinary skill in the art—in this instance, the examiner—would understand the claim term "elastic" in the context of the patent. When an applicant sits idly by while an examiner explains that he understands particular claim language to have a particular meaning and only regards the invention as patentable based on that meaning, the applicant should face a heavy burden in later challenging the examiner's interpretation. That principle is what I understand to underlie the court's statement in Torpharm, Inc. v. Ranbaxy Pharmaceuticals, Inc., 336 F.3d 1322, 1330 (Fed. Cir. 2003), that "an inventor's acquiescence to the examiner's narrow view of patentable subject matter" may be found where the patentee "lets stand an examiner's restrictive interpretation of a claim." The examiner's statement in Elkay Manufacturing Co. v. Ebco Manufacturing Co., 192 F.3d 973, 979 (Fed. Cir. 1999), is to the same effect. There, the unresponded-to examiner's statement was relevant because it indicated that the examiner had relied on the patentee's distinction of a prior art reference in allowing the claim in suit. In this case, likewise, the examiner made clear his understanding of the meaning of the term "elastic" as used in the patent; in that

04-1013                                   2

setting, and in light of the central importance of the examiner's understanding of the meaning of the term to his decision to allow the claims, the absence of any indication that the patentee intended the claim term to be broader supports the district court's conclusion that the "elastic" stimulator rods should not be construed to include rods made of nylon.