Ron NYSTROM, Plaintiff,

v.

TREX COMPANY, INC., The Home Depot, Inc., and Snavely Forest Products, Inc., Defendants.

Civil Action No. 2:06cv569.

United States District Court, E.D. Virginia, Norfolk Division.

May 16, 2008.

Joseph Scott Presta, Nixon & Vanderhye PC, Arlington, VA, Michael Dean Gaffney, Washington, DC, for Plaintiff.

Meredith Hope Schoenfeld, Gerald F. Ivey, Panyin Atta Hughes, Patrick Joseph Coyne, Troy Edwin Grabow, Finnegan Henderson Farabow Garrett & Dunner LLP, Washington, DC, Michael Robert Katchmark, Michael Charles Laurence, Willcox & Savage PC, Norfolk, VA, R. Webb Moore, Hirschler Fleischer PC, Richmond, VA, for Defendants.

## OPINION AND ORDER

WALTER D. KELLEY, JR., District Judge.

This is the second lawsuit that Plaintiff Ron Nystrom ("Nystrom" or "Plaintiff") has filed against Defendants Trex Company, Inc., The Home Depot, Inc., and Snavely Office Products, Inc. (collectively, "Trex" or "Defendants") for alleged infringement of United States Patent No. 5,474,831 (the " '831 patent"). Nystrom lost the first case because the Trex product at issue did not literally infringe the '831 patent. *See Nystrom v. TREX Co.,* 424 F.3d 1136, 1138 (Fed.Cir.2005). Nystrom asserts in this action that Trex has introduced new products (the "Trex II products") that infringe the '831 patent under the doctrine of equivalents. For the reasons set forth below, the Court **GRANTS** Trex's Motion for Summary Judgment (Docket No. 57).

### I. *Factual and Procedural History*

Nystrom is a carpenter and lumber yard owner in Springfield, Virginia. He is also the inventor and sole owner of the '831 patent. The '831 patent covers wooden decking boards that are designed and manufactured with a convex shape. These boards have numerous advantages over conventional planking, including the efficient drainage of water and easy stackability. Trex Company, Inc., located in Winchester, Virginia, manufactures exterior decking materials made from blended cellulose fibers (i.e., sawdust) and recycled plastic. The remaining defendants are Trex Company, Inc.'s retail distributors.

In the first suit between the parties, United States District Judge Jerome Friedman of this Court (the "District Court") construed the term "board," as used in the '831 patent, to mean "made from wood cut from a log." *Nystrom v. Trex Co.,* No. 2:01cv905, 2002 U.S. Dist.

LEXIS 27501, at *16 (E.D.Va. Aug. 19, 2002). The District Court construed the term "manufactured" to mean using "woodworking techniques." *Id.* at *19. Nystrom conceded to the District Court that this claim construction precluded it from proving infringement, so a judgment of non-infringement was entered in favor of the defendants. *Nystrom v. Trex Co.,* No. 2:01cv905, 2002 U.S. Dist. LEXIS 27500, at *8–*9 (E.D.Va. Sept. 11, 2002). Nystrom appealed.

The United States Court of Appeals for the Federal Circuit affirmed the District Court's construction of the two terms discussed above and further affirmed the grant of summary judgment on the ground of non-infringement. *Nystrom,* 424 F.3d at 1151. The Federal Circuit reversed the District Court's construction of the term "convex top surface" and its finding that claims 18–20 of the '831 patent were invalid. *Id.* The case was remanded for further proceedings.

On remand, Nystrom sought to litigate the issue of infringement under the doctrine of equivalents. The District Court refused to entertain this claim, holding that Nystrom's concession of non-infringement applied both to literal infringement and to infringement under the doctrine of equivalents. *Nystrom v. Trex Co.,* No. 2:01cv905, slip op. at 8, 2006 WL 208591 (E.D.Va. Jan. 25, 2006) (Friedman, J.). The Federal Circuit *again* affirmed. *Nystrom v. Trex Co.,* 200 Fed.Appx. 987 (Fed. Cir.2006) (per curiam).

Nystrom proceeds in this second action solely under the doctrine of equivalents. The accused products this time are modified Trex decking boards that were introduced after the inception of the first suit.[1] Nystrom alleges that the Trex II products involve significant changes to the shape, look, and other features of the decking boards.

## II. *Analysis*

### A. *Summary Judgment Standard*

Summary judgment is appropriate when it is apparent from the entire record, viewed in a light most favorable to the non-moving party, that there are no genuine disputes of material fact. *Clark v. Alexander,* 85 F.3d 146, 150 (4th Cir.1996); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When a court declines to grant summary judgment, sufficient evidence must exist favoring the non-moving party that would allow a reasonable jury to return a verdict for that party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A properly supported motion for summary judgment may not be defeated by "the mere existence of some alleged factual dispute between the parties." *Id.* at 247–28, 106 S.Ct. 2505. The requirement is that there be no genuine issue of material fact. *See id.* Summary judgment is warranted "against a party who fails to make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

### B. *Trex's Motion for Summary Judgment*

#### 1. *Res Judicata*

 Trex asserts that the doctrine of res judicata bars Nystrom from litigating in this case any alleged infringement of the

---

1. Nystrom also sued for infringement of United States Patent No. 5,394,667 (the "'667 patent"). The causes of action based on the '667 patent were severed from this action and consolidated with a declaratory judgment action pending under the style of *Trex Co. v. Nystrom,* Civil Action No. 2:08cv35 (E.D. Va. filed Jan. 23, 2008).

'831 patent. "The general concept of [res judicata or] claim preclusion is that when a final judgment is rendered on the merits, another action may not be maintained between the parties on the same 'claim,' and defenses that were raised or could have been raised in that action are extinguished." *Hallco Mfg. Co. v. Foster ("Hallco II")*, 256 F.3d 1290, 1294 (Fed. Cir.2001) (*citing* Restatement (Second) of Judgments §§ 18–19); *see also Fed. Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981) ("A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.").

■■■ In the context of patent law, res judicata bars a patentee from relitigating infringement where a second accused device is essentially the same as the device in the first suit, or if any differences between them are merely colorable. *Hallco II*, 256 F.3d at 1297; *Foster v. Hallco Mfg. Co. ("Hallco I")*, 947 F.2d 469, 479–80 (Fed. Cir.1991). A new cause of action is presented only if the newly accused product is different from the product in the prior litigation. *See, e.g., Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320 (Fed.Cir.1987).

Trex argues that the Trex II products are substantially similar to the original Trex products because the Trex II products are still made from a composite material. Stated alternatively, the Trex II products, like the Trex I products, are not "made from wood cut from a log" or "manufactured" from a "woodworking technique." Because the terms "board" and/or "manufactured" are incorporated into every claim of the '831 patent, Trex considers these claim limitations dispositive. It can copy Nystrom's design wholesale so long as it stays away from using real wood.

■■■ Trex's argument misses the mark. While claim construction is necessary to decide infringement, a separate and distinct inquiry is made for purposes of res judicata. As discussed in *Hallco II*, the "essentially the same" test for claim preclusion or res judicata "compares device to device," whereas the infringement test "compares [the] device to [the] claim."[2] 256 F.3d at 1297 n. 5.

Further, if the Court was to focus on claim construction during res judicata analysis, a comparison between the original and newly accused product would become extremely convoluted. Because Nystrom proceeds in this action under a doctrine of equivalents theory, the Court would have to inject prematurely a doctrine of equivalents analysis into the res judicata analysis to ascertain whether composites made of wood and plastic are equivalent to wood. This comparison is beyond the scope of the res judicata analysis because its expands the test to include factors related to infringement, which is a separate inquiry. *See supra* note 2.

Del Mar Avionics illustrates these principles. 836 F.2d at 1323–24. The plaintiff in that case filed three different lawsuits, challenging three products manufactured at different times by the defendant. *Id.* The first product was found to infringe the

2. While the Federal Circuit declined to assess the relationship between the "essentially the same" test for claim preclusion and the "insubstantial differences" test for infringement, its plain language suggests that claim preclusion focuses on the differences between the devices, and not the actual claim construction. *Hallco II*, 256 F.3d at 1297 n. 5 ("We have no cause to explore here the relationship, if any, between the 'essentially the same' test for claim preclusion and the 'insubstantial differences' test for infringement of a means-plus-function claim or infringement under the doctrine of equivalents (other than to note that the former test compares device to device while the latter test compares device to claim . . . .")).

plaintiff's patent because it had a particular type of circuitry ("type A") that was present in the patent. *Id.* at 1323. However, the second product did not infringe because it contained a modified circuitry ("type C"). *Id.*

When the patentee alleged that a third, newly manufactured product infringed its patent, both parties sought the benefits of issue preclusion and/or res judicata. *Id.* The court declined to give either party the benefit of these doctrines, stating that the "device [was] not previously before the court, [and because it was shown to] differ from those structures previously litigated, [it] require[d] determination of its own facts." *Id.* at 1324. The proper course of action was to determine if the product infringed the patent by applying the "law of the case to the issues of claim interpretation and construction, as developed in connection with types A and C." *Id.*; *see also Roche Palo Alto LLC v. Apotex, Inc.,* 526 F.Supp.2d 985, 991–94, 998–99 (N.D.Cal.2007) (conducting one inquiry to decide whether product infringed because it contained all claim limitations in patent, and conducting separate inquiry to decide whether product was barred by res judicata by comparing original product to accused product).

Here, Nystrom has credibly alleged that the Trex II products are materially different from the products at issue in the prior litigation. The Trex II products have a smooth convex top surface, concave bottom surface, and a specific radius of curvature. (Docket No. 70 ¶¶ 25, 27–28.) The Trex II products also have improved stacking capabilities. *Id.* ¶ 27. The original Trex products, by contrast, had irregular shapes without a specific radius of curvature. *Id.* The original products also had problems with stacking. *Id.* ¶ 33.

The changes that Trex made to its products are significant because claims in the '831 patent address the new features. For example, Claim 1 in the '831 patent states that the "board" must have a concave curved surface on the bottom and a convex surface on the top such that "boards" can be stacked. (Docket No. 70, Ex. 2 at 6.) Several other claims in the '831 patent also discuss the radii of curvature in either the top or bottom of the "boards." *Id.* Because the modifications to the Trex II products clearly implicate the claim limitations, they are more than colorable.

### 2. *Doctrine of Equivalents*

 As stated above, Nystrom proceeds in this action solely under the doctrine of equivalents. This method of proving infringement dictates that "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 21, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997) (citation omitted). A claim element is equivalently present in an accused product if only "insubstantial differences" distinguish the missing claim element from the corresponding aspects of the accused product. *See Sage Prods., Inc. v. Devon Indus., Inc.,* 126 F.3d 1420, 1423 (Fed.Cir.1997). The underlying rationale is that the language of the patent may not capture the true essence of the invention. *See, e.g., Alpex Computer Corp. v. Nintendo Co.,* 102 F.3d 1214, 1223 (Fed.Cir.1996) ("[T]he purpose of the doctrine of equivalents is to prevent others from avoiding the patent by merely making 'unimportant and insubstantial changes and substitutions in the patent.'" (quoting *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,* 339 U.S. 605, 607, 70 S.Ct. 854, 94 L.Ed. 1097 (1950))).

■ There are, however, limitations to the doctrine of equivalents. "[I]t is [clear] that all claim limitations are not entitled to an equal scope of equivalents." *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1106 (Fed.Cir.2000.). "Whether the result of the All Limitations Rule, prosecution history estoppel, or the inherent narrowness of the claim language, many limitations warrant little, if any, range of equivalents." *Id.* (internal citations omitted).

Trex advances three arguments as to why the doctrine of equivalents cannot be used to circumvent the claim construction adopted in the first case. First, Trex asserts that allowing Trex II products, which are composites, to be considered equivalent to "boards" cut from wood, vitiates the claim construction previously given the terms "board" and "manufactured." Second, Trex asserts that Nystrom is barred from utilizing the doctrine of equivalents because he made statements to obtain the patent which expressly disclaimed non-wood products. Finally, Trex asserts that Nystrom is barred because he amended his patent application to surrender non-wood products.

### a. *Vitiation*

■ The doctrine of vitiation has its roots in the "all limitations" rule. "The [all limitations] rules holds that an accused product or process is not infringing unless it contains each limitation of the claim, either literally or by an equivalent." *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1358 (Fed.Cir.2005) (*citing Warner–Jenkinson*, 520 U.S. at 29, 117 S.Ct. 1040).

■ To satisfy this rule, a patentee must meet two prerequisites. "First, … equivalence must be assessed on a limitation-by-limitation basis, as opposed to from the perspective of the invention as a whole." *Id.* "Second, an element of an accused product is not, as a matter of law,

equivalent to a limitation of the claimed invention if such a finding would entirely vitiate the limitation." *Id.* To determine whether an equivalent would "entirely" vitiate a claim limitation, "courts must consider the totality of the circumstances of each case and determine whether the alleged equivalent can be fairly characterized as an insubstantial change from the claimed subject matter without rendering the pertinent limitation meaningless." *Id.* at 1359.

■ Nystrom asserts that the claim terms "board" (defined as "made from wood cut from a log") and "manufactured" (defined as utilizing "woodworking techniques") are "minor" or otherwise insignificant, and "do not in any way prevent the products from performing the same function, in the same way to achieve the same result." (Docket No. 68 at 12–13.) Nystrom argues that the term "board" should be read generally to include an "elongated piece of construction material [that] … include[s] a top surface … manufactured with a round or curved configuration." *Id.* at 12.

Nystrom's interpretation of "board" is exactly the type of expansive reading that the Federal Circuit warned against in *Tronzo v. Biomet Inc.*, 156 F.3d 1154 (Fed. Cir.1998). The patent holder in that case alleged that certain claims in a patent related to artificial hip sockets that included cup implants (adopted for insertion into a hip bone) infringed under the doctrine of equivalents. *Id.* at 1156, 1160. One of the claims at issue required that the cup have a generally conical outer surface. *Id.* at 1160. The accused product had a hemispherical outer surface, but the expert for the patent holder testified that any shape would be equivalent to the conical limitation. *Id.* The court held that reliance on the doctrine of equivalents was "impermissible under the all-elements rule of *War-*

*ner–Jenkinson* because it would write the 'generally conical outer surface' limitation out of the claims." *Id.*; *see also Herman Miller, Inc. v. Teknion Corp.*, 504 F.Supp.2d 360, 375 (N.D.Ill.2007) ("[I]f a back support *not in* contact with the membrane was found to be equivalent to a back support *in* contact with the membrane, the term 'contacts' would be rendered meaningless." (emphasis in original)).

If this Court allowed Nystrom to read "board" to mean an "elongated piece of construction material," the language would be so broad that the limitation would no longer be a limitation at all. By essentially redefining the term "board," Nystrom would overwhelmingly expand the scope of the patent. Indeed, the '831 patent would now cover curved "boards" made of plastic, concrete, clay, and numerous other materials covered by prior art. *See Freedman Seating*, 420 F.3d at 1359 ("[C]ourts must consider the totality of the circumstances of each case and determine whether the alleged equivalent can be fairly characterized as an insubstantial change from the claimed subject matter without rendering the pertinent information meaningless.").

### b. *Argument–Based Estoppel*

■■■■ Prosecution history estoppel "limits the doctrine of equivalents when an applicant … clearly and unmistakably surrenders subject matter by arguments made to an examiner." *AquaTex Indus., Inc. v. Techniche Solutions*, 419 F.3d 1374, 1382 (Fed.Cir.2005) (*quoting Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1344 (Fed.Cir.2005)). "[A]n applicant can make a binding disavowal of claim scope in the course of prosecuting the patent, through arguments made to distinguish prior art references." *Cordis Corp. v. Medtronic*

*Ave, Inc.*, 511 F.3d 1157, 1177 (Fed.Cir. 2008).

■■■ Nystrom made several statements to the Patent Office that demonstrated his intent to restrict the range of equivalents. In particular, Nystrom stated that his "invention represent[ed] a unique and significant advance in the art of exterior wood flooring," and that "[w]ood floors have been in use for hundreds of years." (Docket No. 70, Ex. 48 at 7.) In response to an obviousness rejection,[3] Nystrom argued that "YOSIDA [wa]s clearly *not* concerned with materials made from wood, and especially an elongate board … having a convex top surface … that will shed water and at the same time provide a surface that is suitable for supporting furniture and comfortable to walk on." *Id.* at 9 (emphasis added).

Despite statements such as this one, Nystrom maintains that argument-based estoppel is inapplicable because he never clearly and unmistakably surrendered his subject matter. Nystrom asserts that the statement quoted above was in response to an obviousness challenge, and it can reasonably be construed as simply pointing out the difference between the resin tiles of YOSIDA and wood boards of ZAGELMEYER. He argues that the purpose of the comparison was to show that YOSIDA and ZAGELMEYER were not properly combinable to preclude patentability of Nystrom's invention. *See SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1287 (Fed.Cir.2005) ("There is no 'clear and unmistakable' disclaimer if a prosecution argument is subject to more than one reasonable interpretation, one of which is

---

**3.** The Patent Office initially rejected Nystrom's '831 patent application, concluding that it was obvious based on the ZAGELMEYER patent and the YOSIDA patent. (Docket No. 70, Ex. 48 at 4.) The ZAGELMEYER patent involved a wood plank that was curved at the top but not the bottom. *Id.* The YOSIDA patent involved a board that was curved at the top and the bottom, but was made from tile instead of wood. *Id.*

consistent with a proffered meaning of the disputed term.").

The Court rejects these statements as mere spin. It is clear that Nystrom was referencing his patent, and not ZAGEL-MEYER, when he stated YOSIDA was not concerned with wood. The "wood" board that Nystrom described above can shed water and support furniture—the very benefits that he attributes to his invention. These are not the characteristics of ZAGELMEYER's patent, which Nystrom explicitly stated was "not concern[ed] ... with producing a surface which would shed water and ... be suitable for supporting furniture." (Docket No. 70, Ex. 48 at 8.) Thus, it is clear that Nystrom was not discussing ZAGELMEYER but his patent when he compared it to YOSIDA.[4]

### c. Amendment–Based Estoppel

■■■■■■ A patent applicant who narrows the subject matter of a patent by amending the language cannot later seek to take advantage of subject matter he previously disclaimed. See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 535 U.S. 722, 736, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002) ("[A] narrowing amendment made to satisfy any requirement of the Patent Act may give rise to an estoppel."); Deering Precision Instruments, L.L.C. v. Vector Distribution Sys., 347 F.3d 1314, 1325 (Fed.Cir.2003) ("When the patentee originally claimed the subject matter alleged to infringe but then narrowed the claim in response to a rejection [by the Patent Office], 'courts may presume ... that the territory [the patentee] surrendered is not an equivalent of the territory claimed.[']" (quoting Festo, 535

U.S. at 741, 122 S.Ct. 1831)). "[T]he correct focus is on whether [the] amendment surrendered subject matter that was originally claimed for reasons related to patentability." Deering, 347 F.3d at 1325 (quoting Festo, 535 U.S. at 736, 122 S.Ct. 1831).

■■■ Trex focuses on amendments which specifically recite that the top surface of the "board" is "manufactured" to have a convex top. Trex argues that these amendments limited the scope of the claims to boards that are "manufactured"—a term the Federal Circuit has construed as utilizing "woodworking techniques." Trex argues that inclusion of the term "manufactured" necessarily means that Nystrom gave up claims to any material other than wood.

The Court rejects this ground for summary judgment because Nystrom did not add the term "manufactured" to counter a Patent Office rejection based on non-wood boards. The Patent Office rejected these claims in the '831 patent because Nystrom failed to specify how the "boards" would be curved. The Patent Office noted that all boards naturally curve over time.

Nystrom's amendment was necessary to make it clear that the curvature in his invention was the deliberate result of the manufacturing process, rather than warping caused by nature. The amendment did not address the base material from which the "boards" were created, nor did it detail how the manufacturing process would take place. Amendment-based estoppel is concerned with what a patent applicant intends to abandon, not what he mistakenly surrenders based on unfore-

---

4. The Federal Circuit also noted these inconsistencies in Nystrom v. TREX Co., 424 F.3d 1136, 1144 (Fed.Cir.2005). After stating that it need not decide the issue of whether Nystrom clearly disavowed subject matter that was not made of wood, the court stated that it was "clear ... he was referring to [his] inven-

tion and not ZAGELMEYER." Id. Although the Federal Circuit somewhat confused the issue by later stating there was no disavowal of scope in the written description, id. at 1145, this Court reads that statement as an oversight, given the Federal Circuit's previous discussion.

seen circumstances. *See Festo*, 535 U.S. at 740, 122 S.Ct. 1831 (observing that an amendment does not surrender an equivalent if the "rationale underlying the amendment ... bear[s] no more than a tangential relation to the equivalent in question").

### III. *Conclusion*

For the reasons stated above, Defendants's Motion for Summary Judgement (Docket No. 57) is **GRANTED** under the doctrines of vitiation and argument-based estoppel.

The Clerk is **DIRECTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**