PLAGER, Circuit Judge,
Dissenting.
Because I do not find anywhere in the majority opinion or in the prosecution history that clear and unmistakable evidence of a disclaimer as required by our precedents, I cannot agree with the majority that such a disclaimer was made by Biogen during the prosecution of its application for the '612 patent; I respectfully dissent.
The parties do not dispute that the plain meaning of the claim term “anti-CD20 antibody” is “an antibody that binds to a cell surface CD-20 antigen.” Nor do the parties dispute that the written description of the '612 patent supports that plain meaning. Indeed, the majority concedes that “neither the claims nor the specification [sic] compel a construction contrary to the one offered by Biogen.” Maj. Op. at 1095. The only dispute is whether the applicants disclaimed the plain meaning of “anti-CD20 antibody” during prosecution.
The majority purports to tease out of the prosecution history such a disclaimer. The doctrine of prosecution disclaimer promotes the public notice function of a patent’s intrinsic evidence and protects the public’s reliance on definitive statements made during prosecution. Omega Eng’g, Inc. v. Raytek Corp., 334 F.3d 1314, 1324 (Fed.Cir.2003). However, the give-and-take that is often part of the process of negotiation between an examiner and an applicant may result in less-than-clear understandings, as happened here. Making too much of such ambiguous statements “does not advance the patent’s notice function or justify public reliance.” SanDisk Corp. v. Memorex Products, Inc., 415 F.3d 1278, 1287 (Fed.Cir.2005). Accordingly, we have consistently declined to invoke the doctrine of prosecution disclaimer in the absence of “an unambiguous disavowal that clearly and unmistakably disclaims” the plain meaning of a disputed claim term. Grober v. Mako Prods., Inc., 686 F.3d 1335, 1342 (Fed.Cir.2012) (emphasis added).
The prosecution history of the '612 patent makes clear that one may practice the claimed invention by administering RI-TUXAN® and RITUXAN®-like antibodies to a CLL patient. See J.A. 325 (stating that “[t]he antibodies to be used for the claimed immunotherapy were described in detail in U.S. Patent 5,736,137,” which “describes the isolation, screening and characterization of RITUXAN®”). The question we must answer, however, is whether the prosecution history makes it clear that using RITUXAN®-like antibodies is the only way to practice the claimed invention, and that no other antibodies can be used.
The specific prosecution history on which the majority seems to rely is the following:
Examiner:
Claims 1 and 12 are broadly drawn to ‘... an anti-CD20 antibody or fragment thereof. This is broadly interpreted for examination purposes to be any and all anti-CD20 antibodies, no matter the specificity or affinity for the specific epi-tope on the circulating tumor cells. While the specification is enabling for the application of RITUXAN®, RITUX-IMAB® and 2B8-MX-DTPA in the treatment of hematologic malignancies, the specification is not enabling in the application of all other anti-CD20 antibodies, which may have different structural and functional properties.
J.A. 307.
Applicants:
Applicants respectfully submit that even though antibodies directed to the same antigen might have different affinities and functional characteristics, one of *1099 skill in the art could readily identify an antibody that binds to CD20 with similar affinity and specificity as does RITUX-AN® using techniques that are well known in the art_With that knowledge in hand, the skilled artisan could readily produce anti-CD20 antibodies using similar techniques, and screen such antibodies for those having an affinity and functional activity similar to Ritux-an®.
J.A. 324-25.
Does this constitute a clear and unmistakable disclaimer of all antibodies except RITUXAN® and RITUXAN ©-like antibodies? I do not think so. The examiner was addressing an enablement issue; the applicants’ response was at worst a non-response to the examiner’s concern, and at best a statement that antibodies other than RITUXUN® and RITUXUN®-like antibodies that had similar affinity and specificity are included in the claims. “Similar” does not mean “same.” Applicants’ usage of “similar” is inconsistent with an acceptance by the applicants of the narrow confines proposed by the examiner’s reference to the “specificity or affinity for the specific epitope.”
Regarding the introduction of the “epi-tope” issue, much of the dispute before us centers on whether the applicants disclaimed antibodies that bind to a different binding site (or epitope) than does RI-TUXAN®. Biogen argues that the disputed claim term covers antibodies that bind to CD20 generally. The majority, however, affirms the district court’s decision to the contrary, importing a specific “epitope” into its claim construction.[1] The majority does so because applicants purportedly adopted the examiner’s limitation on this point. See Maj. Op. at 1096. Yet applicants in their response omitted the very term “epitope” that the majority claims they adopted as a limitation. And while the applicants’ decision to omit “epitope” from their response could mean that the applicants silently accepted this limitation suggested by the examiner, it also could mean that the applicants silently rejected it. Even more to the point, when applicants spoke in their disputed statement of binding, they did not say as construed by the district court “bind[s] to the same epi-tope”; applicants said “binds to CD20.”[2]
Applicants’ statements — when considered in light of either the range of antibodies included in the claim, or the specific epitope to which the antibodies might attach — fail to meet the “clear and unmistakable” standard set forth in our case law. This is especially true given our case law that it is the applicant, not the examiner, who disclaims claim scope. See Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1124 (Fed.Cir.2004); see also Sorensen v. Int’l Trade Comm’n, 427 F.3d 1375, 1379 (Fed. Cir.2005). It was the examiner, not the applicants, who invoked the concept of epi-topes. Compare J.A. 307-09 with J.A. 324-28. But it is the applicant, not the examiner, who must give up or disclaim subject matter that would otherwise fall within the scope of the claims, and an applicant’s silence regarding statements *1100 made by the examiner during prosecution cannot amount to a clear and unmistakable disavowal of claim scope. See Sorensen, 427 F.3d at 1379; see also Salazar v. Procter & Gamble Co., 414 F.3d 1342, 1345 (Fed.Cir.2005).
Nothing in the intrinsic record made by the applicants links the efficacy of the recited antibodies to a particular epitope of CD20. To the contrary, the intrinsic evidence repeatedly links the efficacy of the antibodies to their ability to selectively target the CD20 antigen, as opposed to other antigens. See, e.g., J.A. 44^15 ('612 patent, discussing the inventive concept of targeting the CD20 antigen, and incorporating the '137 patent by reference); J.A. 325-26 (prosecution history, linking the efficacy of the antibodies to their ability to bind CD20); J.A. 376 ('137 patent, discussing the inventive concept of targeting the CD20 antigen).
Nowhere in the prosecution history did the applicants state that antibodies that bind to the same epitope on CD20 with similar affinity and specificity as RITUX-AN® must be used, or that antibodies lacking those characteristics must not be used. To the contrary, the applicants repeatedly made clear — including in the same discussion as the allegedly disclaiming statement — that because the invention was based on the discovery that anti-CD20 antibodies could treat CLL, the claimed methods were not limited to the use of any particular type anti-CD20 antibody. See, e.g., J.A. 325-26 (arguing that “the novelty of the presently claimed invention does not lie in an anti-CD20 antibody per se” and that anti-CD20 “antibodies to be designed in the future for use in the claimed methods would certainly be encompassed”).
By ignoring most of the prosecution history and reading something into the above dialogue between the examiner and the applicants that is not there, it is possible to argue, as GSK has done, that the “anti-CD20 antibodies” that may be used in the claimed methods are limited to only RI-TUXAN®-like antibodies. But it is at least equally possible, and more correct, to read the applicants’ prosecution arguments as contemplating the use of antibodies other than RITUXAN®-like antibodies. And when a prosecution argument is subject to more than one reasonable interpretation, it cannot rise to the level of a clear and unmistakable disclaimer. 01 Communique Lab. Inc. v. LogMeIn, Inc., 687 F.3d 1292, 1297 (Fed.Cir.2012). We have long followed the rule that even a poorly-phrased prosecution argument does not a disclaimer make.
Finally, the '612 patent incorporates by reference the '137 patent, which has a broader definition than the majority’s claim construction for “anti-CD20 antibody.” The majority opinion tries to distinguish the '137 patent’s definition as only applying “herein” — or, in other words, in the '137 patent. See Maj. Op. at 1097. This distinction misses the mark.
First, what the majority opinion dismisses as the “special definition” of “anti-CD20 antibody” found in the '137 patent is contained in the incorporated patent, not in the incorporating one. Thus, even assuming that the applicants of the '137 patent were acting as their own lexicographer when broadly defining the term “anti-CD20 antibody,” the '612 patent then incorporated this “special definition” into its own disclosure. Indeed, that is the whole point of incorporation by reference — to incorporate disclosure from another application. If there was ever any doubt on this point, the prosecution history explicitly affirms the reliance on the '137 patent with respect to the antibodies at issue. And this affirmation occurs right in the middle of the allegedly disclaiming discussion of the CD20 antibody relied upon by the majority. See J.A. at 324-25.
*1101 As I read the record, it was error for the district court to construe the claims as requiring the use of “[RITUXAN®] and antibodies that bind to the same epitope of the CD20 antigen with similar affinity and specificity as [RITUXAN®].” Biogen Idee, Inc., 2011 U.S. Dist. LEXIS 120043 at *31. Because the district court’s construction eviscerates the “clear and unmistakable” requirement for prosecution disclaimer, I cannot join the majority in affirming that erroneous construction. I would reverse the district court’s claim construction in favor of the plain meaning of “anti-CD20 antibody” as set out at the beginning of this opinion, and remand for further proceedings under the proper claim construction.[3]

. The district court construed "anti-CD20 antibody,” as “rituximab and antibodies that bind to the same epitope of the CD20 antigen with similar affinity and specificity as rituxi-mab.” Biogen Idec, Inc. v. GlaxoSmithKline LLC, No. 10-CV-00608, 2011 U.S. Dist. LEXIS 120043, at *31 (S.D. Cal. Oct. 17, 2011).

. Applicants' comment and the district court's construction both state "with similar affinity and specificity as [RITUXAN®]” after discussing where the binding occurs. Therefore, the fundamental difference between the applicants’ comment and the construction is the district court's limitation of binding to a specific epitope.

. Given the breadth of the plain meaning construction, nothing in this analysis precludes GSK on remand from the opportunity to raise the issue of validity on the grounds that were troubling the examiner, and which the alleged disclaimer is purported to address.