# United States Court of Appeals for the Federal Circuit

---

**ARENDI S.A.R.L.,**
*Appellant*

**v.**

**GOOGLE LLC, MOTOROLA MOBILITY LLC,**
*Appellees*

---

2016-1249

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2014-00452.

---

Decided: February 20, 2018

---

BRUCE D. SUNSTEIN, Sunstein Kann Murphy & Timbers LLP, Boston, MA, argued for appellant. Also represented by ROBERT M. ASHER.

MATTHEW A. SMITH, Smith Baluch LLP, Washington, DC, argued for appellees. Also represented by ROBERT J. KENT, Turner Boyd LLP, Redwood City, CA.

---

Before NEWMAN, BRYSON, and MOORE, *Circuit Judges.*

NEWMAN, *Circuit Judge.*

The Petitioners Google LLC, Motorola Mobility LLC, and Samsung Electronics Co., Ltd. requested *inter partes* review of Claims 1-79 (all the claims) of U.S. Patent No. 6,323,853 ("the '853 patent") owned by Arendi S.A.R.L. ("Arendi").[1]  The Patent Trial and Appeal Board ("PTAB") instituted review on the ground of obviousness, and after trial the PTAB held all of the claims unpatentable.[2]   On Arendi's appeal, we affirm the PTAB's decision, based on the PTAB's alternative claim construction.

### *Standards of Review*

Claim construction and the determination of obviousness are questions of law, and review of the PTAB's rulings thereon is *de novo.  Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841–42 (2015); *Microsoft Corp. v. Proxyconn, Inc.*, 789 F.3d 1292, 1297 (Fed. Cir. 2015).   Any underlying factual findings that draw on extrinsic evidence, such as dictionaries or treatises or expert testimony, are reviewed for support by substantial evidence in the record.  *Teva*, 135 S. Ct. at 840–42; *Microsoft*, 789 F.3d at 1297; *see generally In re Gartside*, 203 F.3d 1305, 1315 (Fed. Cir. 2000) (following *Dickinson v. Zurko*, 527 U.S. 150, 152 (1999), and holding that the substantial evidence standard of the Administrative Procedure Act governs judicial review of PTO factual findings).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938).

---

[1]    Samsung Electronics Co., Ltd. is not a party to this appeal.

[2]    *Google Inc. v. Arendi S.A.R.L.*, No. IPR2014-00452, 2015 WL 4976582 (P.T.A.B. Aug. 18, 2015) ("PTAB Op.").

### *The PTAB Erred in Its View of the Prosecution History*

The '853 patent relates to a computerized method for identifying and substituting information in an electronic document. '853 patent at col. 2, ll. 5–25. The claims recite a method of information handling whereby information such as a name or address is identified in a document, a database is searched for related information, and the retrieved information is displayed and entered into the document, all on a single command from the user. Claim 1 is representative:

1. A computerized method for information handling within a document created using an application program, the document including first information provided therein, the method comprising:

providing a record retrieval program;

providing an input device configured to enter an execute command which initiates a record retrieval from an information source using the record retrieval program;

upon a single entry of the execute command by means of the input device:

analyzing the document to determine if the first information is contained therein, and

if the first information is contained in the document, searching, using the record retrieval program, the information source for second information associated with the first information; and

when the information source includes second information associated with the first information, performing at least one of,

(a) displaying the second information,

(b) inserting the second information in the document, and

(c) completing the first information in the document based on the second information.

The PTAB instituted *inter partes* review on the ground that the subject matter would have been obvious in view of U.S. Patent No. 5,923,848 ("Goodhand"), or in view of Goodhand in combination with Padwick *et al.*, "Using Microsoft Outlook 97" (Microsoft Press 1996) ("Padwick").

Arendi argued to the PTAB that Goodhand does not show the claim limitation of the "single entry of the execute command," and that this limitation was added to the claims during prosecution, in consultation with the examiner, in order to distinguish a cited reference, U.S. Patent No. 6,085,201 ("Tso"). While Goodhand was not cited during prosecution of the '853 patent, Tso is similar to Goodhand and describes a system of information identification, search, retrieval, and insertion of found information into the document. *See* Tso at col. 2, ll. 7–30.

On October 17, 2000, the Arendi applicant held an interview with the examiner, during which

> Applicant's representative discussed the differences between the Tso and Borovoy references and the present invention. For instance, it was pointed out that in the Tso reference, the user must select the text string to be processed, whereas in the present invention, the user does not have to select the text string to be analyzed. Applicant's representative may submit an After-Final Amendment that amends the independent claim to include this difference.

Interview Summary (Oct. 17, 2000) (J.A. 342).

On December 18, 2000, the applicant amended the claim that issued as claim 1 of the '853 patent to require a

single entry execute command and analysis, as shown below with underlined text added by amendment:

> upon a single entry of the execute command by means of the input device:
>
> analyzing the document to determine if the first information is contained therein, and
>
> if the first information is contained in the document, searching, using the record retrieval program, the information source for second information associated with the first information. . . .

Amendment Under 37 C.F.R. § 1.116 at 1–2 (Dec. 18, 2000) (J.A. 343–44). The Remarks accompanying the amendment included the following:

> During the discussion [with the examiner on October 17, 2000], it was noted that columns 4–5 of Tso teach a user selecting a text string to be processed by clicking on the text string using various selection means. In this respect, the present invention does not require the user to select a text string to be processed since it functions automatically upon a single click of an input device, such as a button, menu item, etc.

*Id.* at 2–3 (J.A. 344–45) (underlining in original).

On January 2, 2001 the examiner wrote "Reasons for Allowance" that included the following statement:

> [I]n Tso, the text string to be processed is determined by the current cursor position, as specified by the user [see col. 4, line 31 to col. 5, line 67], whereas the present invention "does not require the user to select the text string to be processed since it functions automatically upon a single click of an input device" to determine if the first information is contained within the document.

Notice of Allowability at 2 (Jan. 2, 2001) (J.A. 349) (citation in original).

In the PTAB proceeding here on appeal, Arendi argued that this amendment was a "prosecution disclaimer." Arendi argued that the Goodhand reference, like Tso, requires that the user select the information to be searched; and that Goodhand does not show the "single entry" command for the entire sequence of steps. Thus Arendi argued that a "prosecution disclaimer" distinguishes Goodhand, as it did for Tso.

The PTAB presented alternative rulings. In its primary ruling, the PTAB held that no prosecution disclaimer had occurred, and construed the "single entry" limitation of the claims to include text selection by a user. PTAB Op. at *8–9. The PTAB stated: "we find unpersuasive Patent Owner's citation of the examiner's statements in the Notice of Allowance. . . . '[I]t is the applicant, not the examiner, who must give up or disclaim subject matter that would otherwise fall within the scope of the claims.'" PTAB Op. at *10 (quoting *Sorensen v. Int'l Trade Comm'n*, 427 F.3d 1375, 1379 (Fed. Cir. 2005)). On this reasoning, the PTAB held that the claims were not limited by the prosecution record. PTAB Op. at *9–11; *see also* PTAB Op. at *20.

The PTAB misapplied *Sorensen*. In *Sorensen*, the court explained that "in order to disavow claim scope, a patent applicant must clearly and unambiguously express surrender of subject matter during prosecution." 427 F.3d at 1378 (citing *Middleton, Inc. v. Minn. Mining & Mfg. Co.*, 311 F.3d 1384, 1388 (Fed. Cir. 2002)). The court stressed that a disclaimer must be clear and unmistakable (citing *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325–26 (Fed. Cir. 2003)), and cited *Innova/Pure Water, Inc. v. Safari Water Filtration System, Inc.*, 381 F.3d 1111 (Fed. Cir. 2004), for the ruling that "it is the applicant, not the examiner, who must give up or disclaim

subject matter that would otherwise fall within the scope of the claims." *Sorensen*, 427 F.3d at 1379 (quoting *Innova*, 381 F.3d at 1124).

In making its primary ruling, the PTAB declined to credit the prosecution statements, and instead construed the claims as unlimited by the prosecution history. PTAB Op. at *11, *20. On this construction, the PTAB held the claims invalid in view of Goodhand. That was error. "In construing patent claims, a court should consult the patent's prosecution history so that the court can exclude any interpretation that was disclaimed during prosecution." *Sorensen*, 427 F.3d at 1378 (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (en banc)).

Here the applicant amended the claims and explained what was changed and why, and the examiner confirmed the reasons why the amended claims were deemed allowable. *See ACCO Brands, Inc. v. Micro Sec. Devices, Inc.*, 346 F.3d 1075, 1078–79 (Fed. Cir. 2003) (stating that the examiner's Reasons for Allowance made "clear that the examiner and the applicant understood" what was changed and what the invention required). Here too, the examiner's "Reasons for Allowance" made clear that the examiner and the applicant understood what the applicant had changed, and what the claim amendment required.

Based on the PTAB's error in declining to apply the prosecution disclaimer, the ruling of unpatentability on this ground cannot stand. The PTAB then, in an alternative ruling, construed the claims on acceptance of the asserted prosecution disclaimer, as we next discuss:

### *The PTAB's Alternative Holding is Correct*

The PTAB alternatively held that even if the prosecution disclaimer were accepted, the claims are unpatentable for obviousness in view of Goodhand. PTAB Op. at *21. The PTAB compared Goodhand with the '853 pa-

tent's specification and construed the claims in accordance with the disclaimer, and found that "Goodhand's processing involves essentially the same textual analysis as disclosed in the '853 patent, and not user text selection, as argued by Patent Owner." PTAB Op. at *21.

Arendi argues that Goodhand differs because "Goodhand requires the user to identify text by placing it in the address field . . . ." Arendi Reply Br. 1. The PTAB found that there was not such a difference, *see* PTAB Op. at *22, citing the '853 patent's statement that "the user may select the information in the document to be searched by the program in the database (e.g., by highlighting, selecting, italicizing, underlining, etc.), as will be readily apparent to those skilled in the art." '853 patent at col. 10, ll. 7–10.

The PTAB also found that the Goodhand system, like that of the '853 patent, performs an analysis of "first information" on an "execute command" such as the movement of a cursor, entry of a "check names" command, or entry of a "send" command. PTAB Op. at *23. The PTAB cited Goodhand's Figures 6a and 6b that show names in the address field, whereby on the "check names" command the Goodhand system searches the database and retrieves and displays or enters the correct information. *Id.* The PTAB also found that Goodhand's "check names" command is the same as the "execute" command of the '853 patent, and produces a search of the database and retrieval of relevant information. *Id.*

The PTAB concluded that "a person of ordinary skill in the art would have understood from Goodhand that its system performs analysis to determine if address field 600 [citing Figure 6] contains any information, and its system is capable of breaking down the information contained in address field 600 to isolate display names, which constitute first information." PTAB Op. at *14. The PTAB found that Goodhand describes three forms of analysis of

the text: (1) identifying and separating display names from semicolons and spaces, which the PTAB found analogous to the '853 patent's use of "paragraph/line separations/formatting, etc." when analyzing text; (2) identifying fully-formatted email addresses from non-formatted addresses, which the PTAB found analogous to the '853 patent's distinguishing an email address from a name; and (3) determining whether any text has been placed into an address field, which the PTAB found analogous to the '853 patent's taking "appropriate" actions when "the program *found nothing in the document* or what is found was un-interpretable." PTAB Op. at *15 (emphasis in original), *17–20. Substantial evidence supports the PTAB's findings as to the similarities between Goodhand and the '853 patent regarding identification and analysis of information.

The PTAB further found that Goodhand, like the '853 patent, does not require user selection of text to be searched. For example, Goodhand states:

> When a user enters an Internet e-mail address in the form of xxxxx@yyyyy.zzz, the user need not create a new name in his or her directory before the name can be resolved. The preferred e-mail system simply identifies such an address as an Internet address and resolves it without further user intervention.

Goodhand at col. 20, ll. 12–17. The PTAB reasoned that "if a system analyzes a document to determine if it contains information, then the user must not have selected information." PTAB Op. at *23.

The PTAB also found that Goodhand, like the '853 patent, conducts the ensuing search and retrieval of information without intervention by the user. PTAB Op. at *21. Indeed, Goodhand explains that the resolution process is "automatic" and occurs "in the background, which means that the user may continue to use the com-

puter to perform other tasks while the display names are being resolved." *See* Goodhand at col. 16, l. 37 to col. 17, l. 5. Goodhand further describes the resolution of display names "without requiring any additional input from the user." *Id*. at col. 16, ll. 54–61; col. 17, ll. 2–5; col. 20, ll. 14–17. Thus the PTAB correctly concluded that Goodhand's teaching of "resolution" of information "without further user intervention" shows these operations "upon a single entry of the execute command." PTAB Op. at *21.

In sum, the PTAB found that Goodhand shows all of claim 1's limitations, when giving effect to the prosecution disclaimer and limiting the scope of the "single entry" command. This finding is supported by substantial evidence. On the PTAB's findings, the alternative conclusion of unpatentability on the ground of obviousness in view of Goodhand is sustained.

Arendi does not argue the patentability of any other claim. Thus we affirm the PTAB's decision of unpatentability of the additional claims. *See In re Kaslow*, 707 F.2d 1366, 1376 (Fed. Cir. 1983) ("Since the claims are not separately argued, they all stand or fall together.").

### Conclusion

In view of our affirmance of the alternative claim construction based on the prosecution disclaimer, we conclude that the decision of unpatentability based on obviousness is correct, and is affirmed.

**AFFIRMED**