NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**20/20 VISION CENTER, LLC,**
*Plaintiff-Appellant*

**v.**

**VISION PRECISION HOLDINGS, LLC, STANTON OPTICAL FLORIDA, LLC, DBA STANTON OPTICAL & MY EYELAB, THOMAS CAMPEN MD & ASSOCIATES, PLLC, M&D OPTICAL FRANCHISE, LLC,**
*Defendants-Appellees*

---

2019-1504

---

Appeal from the United States District Court for the Southern District of Florida in No. 9:18-cv-80670-RLR, Judge Robin L. Rosenberg.

---

Decided: March 4, 2020

---

K. LEE MARSHALL, Bryan Cave Leighton Paisner LLP, San Francisco, CA, argued for plaintiff-appellant. Also represented by JOSEPH J. RICHETTI, ALEXANDER DAVID WALDEN, New York, NY; TAYLOR FORD, ROBYN KRAMER, King, Blackwell, Zehnder & Wermuth, P.A., Orlando, FL.

JOSEPH W. BAIN, Shutts & Bowen LLP, West Palm Beach, FL, argued for defendants-appellees. Also represented by AMY WESSEL, Miami, FL.

————————————

Before PROST, *Chief Judge,* NEWMAN and WALLACH, *Circuit Judges.*

WALLACH, *Circuit Judge.*

Appellant 20/20 Vision Center, LLC ("20/20 Vision") sued Appellees Vision Precision Holdings, LLC, Stanton Optical Florida, LLC, doing business as Stanton Optical & My Eyelab, Thomas Campen MD & Associates, PLLC, and M&D Optical Franchise, LLC (collectively, "Vision Precision") in the U.S. District Court for the Southern District of Florida ("District Court"), alleging, inter alia, infringement of claims 13, 14, 15, and 17 ("the Asserted Claims") of 20/20 Vision's U.S. Patent No. 9,230,062 ("the '062 patent"). Following a claim construction hearing, the District Court entered an order construing all disputed claim terms in Vision Precision's favor. *See 20/20 Vision Ctr., LLC v. Vision Precision Holdings, LLC*, No. 9:18-CV-80670-RLR, 2018 WL 5807654, at *10–11 (S.D. Fla. Nov. 6, 2018). As a result, the parties filed a joint motion for entry of final judgment, which the District Court entered as a consent judgment of non-infringement. J.A. 21–25 (Consent Judgment).

20/20 Vision appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1) (2012). We affirm.

BACKGROUND

Entitled "Systems and Methods for Enabling Customers to Obtain Vision and Eye Health Examinations," the '062 patent "generally relates to the fields of optometry and ophthalmology and the performance of eye examinations[,]" where "certain embodiments are directed to systems and methods for enabling customers and other users

to obtain eye health examinations and vision examinations through a customer diagnostic center that includes ophthalmic equipment and instruments for performing various tests and procedures pertaining to the customers' eye health and visual ability." '062 patent col. 1 ll. 16–24. The '062 patent is directed to the "need for a system having an automated or semi-automated customer diagnostic center that allows individuals to obtain eye health examinations and vision examinations with little or no on-site assistance." *Id.* col. 3 ll. 58–61.

The '062 patent discloses "a system . . . that includes a customer diagnostic center that is configured to generate customer examination data," and which "provides a user interface" and "ophthalmic equipment" to "administer[] tests." *Id.* col. 4 ll. 15–24. The data is conveyed "over a network" from the "customer diagnostic center" to "[a] diagnostic center server" such that the data can be accessed remotely "by an eye-care practitioner" for "review and evaluation." *Id.* col. 4 ll. 24–34. "An eye health report is [then] provided to the customer via the network." *Id.* col. 4 ll. 34–35. In some embodiments, "the system (or a portion thereof) may be configured to be fully automated," such that customers may "obtain vision examinations . . . with no assistance from others." *Id.* col 32 ll. 12–17.

Independent claim 13 recites in relevant part:

A server for providing services related to eye health and vision examinations, wherein the server is configured to:

. . . .

administer one or more tests to the customer during the eye examination conducted at the diagnostic center utilizing the ophthalmic equipment, the eye examination including an objective portion that utilizes the ophthalmic equipment to derive

4    20/20 VISION CENTER, LLC v. VISION PRECISION HOLDINGS

objective measurements pertaining to the one or more tests and a subjective portion that utilizes an audio response system that is configured to present questions to and receive responses from the customer pertaining to the one or more tests, wherein the subjective portion of the eye examination is administered using an iterative process that includes:

selecting questions to present to the customer based on both the objective measurements derived during the objective portion of the eye examination and the responses that are received from the customer via the audio response system;

*based on the responses received from the customer via the audio response system, automatically adjusting ophthalmic equipment utilized in administering the subjective portion of the eye examination*; and

determining that the iterative process should be concluded in response to detecting that a particular combination of the responses received from the customer satisfies one or more conditions indicating that sufficient data has been collected for the subjective portion of the eye examination

. . . .

*Id.* col. 51 l. 19–col. 52 l. 18 (emphasis added). Claim 13's "ophthalmic equipment" includes "a set of [medical] instruments" that are "coupled to an equipment controller that is configured to receive instructions for controlling the ophthalmic equipment." *Id.* col. 51 ll. 35–38.

Claims 14, 15, and 17 depend from claim 13. Dependent claim 14 provides for "at least one server [being] integrated with the diagnostic center." *Id.* col. 52 ll. 19–20. Dependent claim 15 recites in relevant part:

The server of claim 13, wherein the request pertains to a synchronous vision examination, and the server is further configured to:

> *establish a real-time connection* between the practitioner device associated with the selected eye-care practitioner and the diagnostic center *to permit communications between the customer and the selected eye-care practitioner* during the synchronous vision examinations; [and]
>
> . . . .
>
> *permit the practitioner device associated with the selected eye-care practitioner to remotely administer an interactive refraction test* over the network via the real-time connection, wherein instructions are transmitted to the diagnostic center over the network to control the ophthalmic equipment while administering the interactive refraction test
>
> . . . .

*Id.* col. 52 ll. 21–37 (emphases added). Similarly, dependent claim 17 recites in relevant part:

The server of claim 13, wherein the request pertains to a synchronous eye health examination, and the server is further configured to:

> *establish a real-time connection* between the practitioner device associated with the selected eye-care practitioner and the diagnostic center *to permit communications between the customer and the selected eye-care practitioner* during the synchronous eye health examinations; [and]
>
> *permit the practitioner device associated with the selected eye-care practitioner to remotely administer one or more tests associated with the synchronous eye health examination* over the network via the real-time connection, wherein instructions received by the diagnostic center over the network are utilized to control the ophthalmic equipment during the synchronous eye health examination

. . . .

*Id.* col. 52 l. 62–col. 53 l. 10 (emphases added).

## DISCUSSION

### I. Standard of Review and Legal Standard

"The proper construction of a patent's claims is an issue of Federal Circuit law[.]" *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1228 (Fed. Cir. 2011) (citation omitted). "[C]laim construction must begin with the words of the claims themselves." *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 457 F.3d 1293, 1301 (Fed. Cir. 2006) (citation omitted). "[W]ords of a claim are generally given their ordinary and customary meaning" that they "would have to a person of ordinary skill in the art [('PHOSITA')] in question at the time of the invention." *Phillips v. AWH Corp.*,

415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc) (internal quotation marks and citations omitted).  The PHOSITA "is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification."  *Id.* at 1313.[1]  Prosecution history may also be used to supply additional evidence of a claim term's intended meaning.  *See Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004).[2]  "We review the district court's evaluation of the patent's intrinsic record during claim construction de novo."  *Info-Hold, Inc. v. Applied Media Techs. Corp.*, 783 F.3d 1262, 1265 (Fed. Cir. 2015) (citation omitted).[3]

## II. The District Court Properly Construed Independent Claim 13's "Automatically Adjusting" Limitation

The District Court, relying on intrinsic evidence, determined that a PHOSITA would understand the limitation

---

[1]    "A specification includes both the written description and the claims of the patent."  *Monsanto Tech. LLC v. E.I. DuPont de Nemours & Co.*, 878 F.3d 1336, 1341 (Fed. Cir. 2018) (internal quotation marks and citation omitted).

[2]    "The prosecution history . . . consists of the complete record of the proceedings before the [U.S. Patent and Trademark Office][.]"  *Phillips*, 415 F.3d at 1317 (citation omitted).

[3]    20/20 Vision argues that "the District Court sidestepped its fundamental duty to construe the patent claims," Appellant's Br. 27 (capitalization altered), because it "adopted [Vision Precision's] propos[ed] [claim construction order] largely verbatim, without any independent explanation or analysis," *id.* at 28, such that "the order as-a-whole should be viewed with a considerable degree of skepticism," *id.* at 30.  First, 20/20 Vision did not raise this argument before the District Court.  J.A. 23–24 (consenting to final judgment of non-infringement based on the District

"[b]ased on the responses received from the customer via the audio response system, *automatically adjusting* ophthalmic equipment" in independent claim 13 to mean that "the server hardware and software is configured to automatically transform the responses received through the audio response system into instructions to adjust the ophthalmic equipment without requiring assistance from an eye care practitioner or on-site technician." *20/20 Vision*, 2018 WL 5807654, at *11 (emphasis added). 20/20 Vision argues that "the intrinsic record" and "express claim language" establish that "automatically adjusting the ophthalmic equipment" means that the ophthalmic equipment is adjusted "by the equipment controller based on the instructions received from an eye-care practitioner." Appellant's Br. 53. We disagree with 20/20 Vision.

The District Court correctly construed "[b]ased on the responses received from the customer via the audio response system, automatically adjusting ophthalmic equipment." We begin our analysis with the claims. *See Phillips*, 415 F.3d at 1312 ("[W]e look to the words of the claims themselves . . . to define the scope of the patented invention[.]" (internal quotation marks and citation omitted)). Independent claim 13 recites "[a] server" that "is configured to . . . administer one or more tests to the customer during [an] eye examination[.]" '062 patent col. 51 ll. 19–20, 45–46. The server's potential "tests" include "an

Court's claim construction). It is accordingly waived. *See Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1322 (Fed. Cir. 2008) ("Our precedent generally counsels against entertaining arguments not presented to the district court." (citation omitted)). Second, 20/20 Vision's argument lacks a legal basis. That "the [D]istrict [C]ourt adopted many of [a prevailing party's] proposed findings does not alter our basic standard of review." *Roton Barrier, Inc. v. Stanley Works*, 79 F.3d 1112, 1116 (Fed. Cir. 1996).

objective portion" and "a subjective portion." *Id.* col. 51 ll. 48, 50. The server "administer[s] [the subjective portion] using an iterative process that includes" employing "an audio response system . . . configured to present questions to and receive responses from the customer" and, "based on [those] responses," "automatically adjusting ophthalmic equipment." *Id.* col. 51 ll. 19, 54–64. As such, by claim 13's plain language, its server can administer the "subjective portion" of an eye examination without assistance from an eye care practitioner or technician, utilizing the "audio response system" to "receive[]" customer responses and "automatically adjusting the ophthalmic equipment" "based on [those] responses." *Id.* col. 51 ll. 45–64; *see Brookhill-Wilk 1, LLC. v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1299 (Fed. Cir. 2003) ("While certain terms may be at the center of the claim construction debate, the context of the surrounding words of the claim also must be considered in determining the ordinary and customary meaning of those terms.").

We next look to the broader specification. *See Phillips*, 415 F.3d at 1313 ("[T]he [PHOSITA] is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification."). The specification does not expressly define "automatically adjusting," it does, however, repeatedly use variations of the term "automatically." *See Irdeto Access, Inc. v. Echostar Satellite Corp.*, 383 F.3d 1295, 1300 (Fed. Cir. 2004) ("[T]he specification may define claim terms by implication such that the meaning may be found in or ascertained by a reading of the patent documents." (internal quotation marks and citation omitted)). For example, the specification explains that the '062 patent encompasses an "eye testing and evaluation system" that "may be implemented using different levels of *automation* and/or different types of assistance from on-site and/or remote individuals." '062 patent col. 32 ll. 5–11 (emphasis added). "[T]he system (or a portion

thereof) may be configured to be fully *automated*," such that customers may "obtain vision examinations . . . with no assistance from others." *Id.* col 32 ll. 12–16 (emphasis added). This supports our understanding that independent claim 13 recites a server that is configured to perform eye-examination tests automatically—that is, in a way that is automated, without requiring the assistance of an eye care practitioner or on-site technician. *See Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011) (explaining that claim construction "tether[s] the claims to what the specification[] indicate[s] the inventor actually invented").

Last, we consider the prosecution history. *See Phillips*, 415 F.3d at 1317 ("[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution."). During patent prosecution, in response to patentability and obviousness rejections pursuant to 35 U.S.C. §§ 101, 103 (2012), 20/20 Vision amended its proposed claims to add the limitation "automatically adjusting ophthalmic equipment." J.A. 1757. The patent examiner had rejected the relevant claims as "directed toward . . . the abstract idea of remotely conducting eye examinations by providing the patient with instructions to administer the exam and forwarding results of the exam to a physician for analysis," J.A. 1757, and obvious over prior art that disclosed such a "system for providing eye health and vision examinations," J.A. 1666. In response, 20/20 Vision amended its claims to recite a server "configured to," inter alia, "administer one or more tests to the customer," with "a subjective portion that" includes "an iterative process" in which the server "automatically adjust[s] ophthalmic equipment" "based on the responses received from the customer via the audio response system." J.A. 1718–19.

In adding the "automatically adjusting" limitation, 20/20 Vision explained that "automatically adjusting"

meant that "[t]he objective measurements and subjective responses," received from the customer "via the audio response system," "may be automatically transformed into instructions to control or adjust settings for the ophthalmic equipment." J.A. 1736. 20/20 Vision described the process as "automated and iterative," such that, unlike in prior art, eye examination tests could be conducted "without assistance from an eye practitioner or on-site technician." J.A. 1741; *see* J.A. 1736–37 (explaining that automation "permits the subjective portion of an eye examination to be conducted without assistance from an eye [care] practitioner or on-site technician"). The patent examiner expressly relied upon these representations in withdrawing his § 101 and § 103 rejections. J.A. 1757 (withdrawing the § 101 rejection because the "limitations added upon amendment including [the] automatically adjusting [limitation] . . . are limitations considered significantly more [of an] improvement to another technology or technical field"), 1757 (withdrawing the § 103 rejection "based on the changes made by [20/20 Vision] to the claims"). This confirms our understanding that independent claim 13's server is configured to automatically adjust the ophthalmic equipment, based on responses received from the customer through the audio response system, without requiring assistance from an eye care practitioner or on-site technician. *See Arendi S.A.R.L. v. Google LLC*, 882 F.3d 1132, 1136 (Fed. Cir. 2018) (explaining that prosecution disclaimer is proper where "the applicant amended the claims and explained what was changed and why, and the examiner confirmed the reasons why the amended claims were deemed allowable").

20/20 Vision's primary counterarguments are unpersuasive. First, 20/20 Vision argues that claim 13 specifically, and the Asserted Claims generally, require "that the ophthalmic equipment is 'automatically adjusted' by the equipment controller based on instructions received from an eye-care practitioner." Appellant's Br. 53

(capitalization altered). 20/20 Vision argues that, while "claim 13 does not restrict" who or what automatically adjusts the ophthalmic equipment, *id.* at 53–54, dependent claims 15 and 17 "both . . . recite that the ophthalmic equipment is controlled . . . by the eye-care practitioner," such that independent claim 13 must encompass such a limitation, *id.* at 54. This argument is without merit. It is contrary to the plain language of independent claim 13. *See* '062 patent col. 51 ll. 19–20, 45–55 (reciting that the "server" "administer[s]" the "subjective portion" of an eye examination, including "automatically adjusting ophthalmic equipment" based on customer responses). It also improperly reads a limitation from dependent claims 15 and 17 into independent claim 13. *See Nazomi Commc'ns, Inc. v. Arm Holdings, PLC*, 403 F.3d 1364, 1370 (Fed. Cir. 2005) (explaining that, "normally . . . limitations stated in dependent claims are not to be read into the independent claim from which they depend" (internal quotation marks and citation omitted)).

Second, 20/20 Vision argues that, because the specification includes embodiments in which "eye-care practitioners (and other individuals) provid[e] instructions and inputs to the equipment controller to adjust the equipment during the eye examinations," Appellant's Br. 55, the "specification confirms that [the] ophthalmic equipment is automatically adjusted by eye-care practitioners[,]" *id.* at 54. This argument is similarly without merit. It improperly reads limitations from exemplary embodiments into independent claim 13. *See Liebel–Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004) ("[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited."). Accordingly, the District Court properly construed "[b]ased on the responses received from the customer via the audio response system, automatically adjusting ophthalmic

equipment" to mean that "the server hardware and software is configured to automatically transform the responses received through the audio response system into instructions to adjust the ophthalmic equipment without requiring assistance from an eye care practitioner or on-site technician." *20/20 Vision*, 2018 WL 5807654, at *11.

### CONCLUSION

We have considered 20/20 Vision's remaining arguments and find them unpersuasive.[4] Accordingly, the Consent Judgment of the U.S. District Court for the Southern District of Florida is

## AFFIRMED

---

[4]    20/20 Vision contends that the District Court also erred by misconstruing the terms "eye-care practitioner," *see* Appellant's Br. 30–42, and "audio response system," *see id.* at 42–51. However, based on parties' concessions at oral argument, we need not reach these issues. *See* Oral Arg. at 17:07–38, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2019-1504.mp3 (20/20 Vision agreeing that affirmance on any one of the three terms at issue is "sufficient basis for affirming a judgment of non-infringement" of the Asserted Claims); *id.* at 17:56–18:11 (Vision Precision stating that affirmance on any one claim construction "would be the end of the case"); *see also Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.,* 200 F.3d 795, 803 (Fed. Cir. 1999) ("[O]nly those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy."); J.A. 23–24 (Consent Judgment) (providing that the parties "stipulate and agree" that the District Court's construction of each claim term "served as a separate ground" on which Vision Precision is "entitled to judgment as a matter of law on the issue of non-infringement" of the Asserted Claims).